UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VICTORIA SCOTT AND J.B. SCOTT | CIVIL ACTION |
| VERSUS | NO. 23-2169 |
| ARIENS COMPANY, ABC INSURANCE COMPANY, HOME DEPOT U.S.A., INC. and XYZ INSURANCE COMPANY | SECTION "A" (4) |

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 22)** filed by Defendants Ariens Company ("Ariens") and Home Depot U.S.A., Inc. ("Home Depot"). The motion, set for submission on February 5, 2025, is before the Court on the briefs without oral argument. For the following reasons, the motion is **GRANTED** as to Plaintiffs' claims under the Louisiana Products Liability Act ("LPLA") against Ariens and **DENIED WITHOUT PREJUDICE** as to Plaintiffs' remaining claims against Home Depot.

**I.    Background**

    a.  Factual Background

This is a products liability action concerning a malfunctioning lawn mower owned by Plaintiffs Victoria and J.B. Scott. The couple purchased an Ariens Ikon XD "zero-turn" lawn mower from Home Depot in January 2019.[1] More than a year later, on September 25, 2021, the lawn mower spontaneously caught fire while operated by Mrs. Scott.[2] The fire was first observed by Mr. Scott, who immediately told his to wife get off the machine.[3] Heeding his warning, Mrs.

---

[1] Complaint, Rec. Doc. 1-1, ¶ 6.

[2] *Id.* ¶ 7, 11.

[3] *Id.* ¶ 11.

Scott jumped off and landed on both feet,[4] but her escape allegedly caused her to suffer knee, back, and neck injuries.[5]

### b. Procedural Background

On September 26, 2022, Plaintiffs filed this lawsuit in state court asserting personal injury claims against Home Depot and Ariens. As distributor of the lawn mower, they claim Home Depot (i) was negligent in distributing, marketing, and/or selling the lawn mower, and (ii) made misrepresentations and/or omissions of material fact regarding the lawn mower's fitness for its intended use.[6] As manufacturer of the lawn mower, they claim Ariens' product was unreasonably dangerous in violation of the LPLA due to its construction and composition, design defects, inadequate warnings, and failure to conform to an express warranty.[7]

The state court proceedings continued until Defendants received notice that the amount in controversy exceeded the requisite diversity jurisdiction threshold, at which point the matter was timely removed to federal court.[8]

On January 7, 2025, Defendants filed the instant motion for summary judgment. The motion principally argues that Plaintiffs have failed to provide any competent evidence to support their claim that the lawn mower was unreasonably dangerous under the LPLA.[9] It posits that Plaintiffs have failed to provide competent expert testimony to support their claim because the expert—who Plaintiffs failed to formally designate—admitted that he holds "no opinions with respect to the design or manufacture of the machine, nor . . . any opinions with regard to the

---

[4] V. Scott Dep., Rec. Doc. 22-3, 162:2-3.

[5] Rec. Doc. 1-1, ¶ 14.

[6] *Id.* ¶¶ 18–19.

[7] *Id.* ¶ 17.

[8] Notice of Removal, Rec. Doc. 2, ¶ 5.

[9] Mot. Summ. J., Rec. Doc. 22-1, at 1.

machine's conformance to express warranties" and that he "has no training with regard to warnings."[10] As it relates to Home Depot, the motion argues that Plaintiffs' allegations are "based on the notion that the product in this case was 'unreasonably dangerous,' not 'fit for its intended use' or otherwise not 'of merchantable quality,'" and, as such, the claims should be dismissed against Home Depot because Plaintiffs cannot carry their burden of proof to show that the machine at issue was unreasonably dangerous.[11]

Plaintiffs' response in opposition makes two arguments.[12] First, Plaintiffs argue the Court should exercise its discretion to allow the untimely disclosure of witnesses under Federal Rule of Civil Procedure 26.[13] Plaintiffs next argue that proximate cause was established when their expert witness opined that, "[t]he fire originated at the top side of the mower's deck and resulted from heat generated from friction created by moving parts."[14] For both of these reasons, Plaintiffs contend Defendants' motion should be denied.

## II. Legal Standards

### a. Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV Inc. v. Robson*, 420 F.3d 532,

---

[10] *Id.* at 2 n.2.

[11] *Id.* at 2 n.1.

[12] Pls.' Resp. in Opp., Rec. Doc. 30.

[13] *Id.* at 3. The Court notes, however, that, despite Plaintiffs' lengthy discussion of the rules governing the Court's discretion to grant leave, a request for such relief is absent from the record and from their response. *See id.* at 2–4. For the reasons discussed *infra*, the Court need not address whether Plaintiffs should be permitted to make an untimely disclosure of witnesses.

[14] *Id.* at 5.

536 (5th Cir. 2005). When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). All reasonable inferences are drawn in favor of the nonmoving party. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist. *Celotex*, 477 U.S. at 322–24.

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the

4

nonmovant's claim. *Id.* at 331–32 (Brennan, J., dissenting).[15] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party." *Celotex*, 477 U.S. at 332–33.

Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant. *Id.* If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3. "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving

---

[15] *See also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A Wright, Miller & Kane, Fed. Prac. and Pro. § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial." *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

 b. **Louisiana Products Liability Act**

The LPLA establishes the "exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. § 9:2800.52; *Brown v. R.J. Reynolds Tobacco, Co.*, 52 F.3d 524, 526 (5th Cir. 1995). "Under any theory of defect, a plaintiff must establish, as an essential element of his or her case, that the damage was 'proximately caused by a characteristic of the product that renders the product unreasonably dangerous' and, further, that such a characteristic existed at the time the product left the control of its manufacturer." *Underwood v. Gen. Motors LLC*, 14-188, 2015 WL 5475610, at *2 (M.D. La. Sept. 17, 2015) (quoting La. R.S. §§ 9:2800.54(A), 9:2800.54(C)). Thus, "the claimant in an LPLA products liability claim has the burden of proving," *Caboni v. Gen. Motors Corp.*, 398 F.3d 357, 361 (5th Cir. 2005), the following elements:

> (1) that the defendant is a manufacturer of the product;
>
> (2) that the claimant's damage was proximately caused by a characteristic of the product;
>
> (3) that this characteristic made the product "unreasonably dangerous"; and

> (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Jack v. Alberto-Culver USA, Inc.*, 949 So.2d 1256, 1258 (La. 2007) (citing La. R.S. § 9:280054(A)).

A product may be "unreasonably dangerous" within the meaning of the statute in any of four ways: (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty. *Battistella v. Daimler Chrysler Motors, Co.*, 03-2286, 2004 WL 1336444, at *1 n.1 (E.D. La. June 14, 2004). "Whether a product is unreasonably dangerous, and thereby is defective, is a question of fact to be made by the factfinder." *Hines v. Remington Arms Co.*, 94-455, p. 6 (La. 12/8/94) 648 So.2d 331, 335.

### III. Analysis

In this case, there is no real dispute regarding the first and fourth elements of a prima facie LPLA claim—*i.e.*, that Ariens manufactured the Ikon XD "zero-turn" lawn mower, and that Plaintiffs' alleged injuries arose from a reasonably anticipated use of the product. Instead, Defendants contend that Plaintiffs have not met their burden to establish any genuine dispute of material fact with respect to the second and third elements of their LPLA claim—*i.e.*, that Plaintiffs' injuries were proximately caused by a characteristic of the lawn mower, and that this characteristic made the product unreasonably dangerous. More specifically, Defendants assert that "Plaintiffs have provided absolutely no competent evidence that would support their claims under the [LPLA] against [Ariens] nor any evidence to support the essential element that the condition of the machine at issue was unreasonably dangerous."[16]

---

[16] Rec. Doc. 22-1, at 1.

Because it is Plaintiffs' burden to prove the elements of their LPLA claim, *Caboni*, 398 F.3d at 361, and Defendants have asserted through their motion that there is no evidence in the record to establish an essential element of the nonmovant's claim, the Court now considers (i) whether Plaintiffs have "call[ed] the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party"; and (ii), if so, whether Defendants have demonstrated the inadequacy of the evidence relied upon by the nonmovant. *Celotex*, 477 U.S. at 331–33. As it relates to their claims arising under the LPLA, Plaintiffs have failed to call the Court's attention to supporting evidence already in the record that was overlooked or ignored by Defendants. But even if they had, Defendants have sufficiently demonstrated the inadequacy of the evidence relied upon by Plaintiffs such that summary judgment is proper.

   **a. Plaintiffs have failed to establish that their injuries were proximately caused by a characteristic of the product.**

The LPLA does not "eliminate Louisiana's duty-risk approach to proximate causation." *Traina v. Nationsbank of Tex., N.A.*, No. 00-160, 2001 WL 1041773, at *7 (E.D. La. Sept. 7, 2001) (citing J. Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 LA. L. REV. 565, 583 n.88 (1989) for the proposition that "The LPLA does not change the duty/risk analysis of proximate cause"). The LPLA does, however, require that claimants establish their injuries were proximately caused by *a characteristic* of the allegedly defective product. La. R.S. § 9:2800.54(A); *see e.g.*, *Pickett v. RTS Helicopter*, 128 F.3d 925, 929 (5th Cir. 1997) ("Regardless of which theory of liability we consider, under the LPLA the Picketts must also establish that the actual failure of the seat belt (and thus Mr. Pickett's death) was proximately caused by the capability of misassembly.").

Louisiana courts have defined proximate cause as "any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred." *Pickett*, 128 F.3d at 929 (5th Cir. 1997)

(quoting *Sutton v. Duplessis*, 584 So.2d 362, 365 (La.Ct.App. 1991)). Here, rather than establish their injuries were proximately caused by a characteristic of the product as required by the LPLA, Plaintiffs have merely adopted the broad stroke conclusion of their sole expert witness, who ambiguously opined that "[t]he fire originated at the top side of the mower deck and resulted from heat generated from friction created by moving parts."[17]

What is perhaps most fatal to Plaintiffs' proximate cause argument, however, is not its overbreadth or ambiguity, but that it fails to establish any causation whatsoever. Although absent from Plaintiffs' brief, the attached deposition transcript makes clear that their expert's conclusion was based on several potential causes, including (1) "heat generated from a seized or damaged pully or bearing," (2) "[a]n improperly routed belt," or (3) "buildup of debris around the belt or pulley."[18] But in the same deposition the expert subsequently testified that there has been no identification of a failure point.[19] In other words, it remains unclear whether a characteristic of a defective product caused Plaintiffs' injuries or, alternatively, if their injuries were caused by operator error, Plaintiffs' own failure to maintain the lawn mower, or an unknown intervening force.

Finally, the Court addresses Plaintiffs' ambiguous invocation of *res ipsa loquitur* in their Statement of Disputed Facts. (*See* Rec. Doc. 30-1, ¶ 1 ("Further, Plaintiff has another count of res ipsa loquitur regarding this incident.")). As the Fifth Circuit has stated,

> The doctrine of *res ipsa loquitur* allows for an inference of negligence or liability when the circumstances of an accident are so unusual as to preclude other probable explanations. *See Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 938 So.2d 35, 43–44 (La. 2006). But for *res ipsa loquitur* to apply, a plaintiff must "sufficiently exclude inference of the plaintiff's own responsibility

---

[17] Rec. Doc. 30 at 5.

[18] Tauzin Dep., Rec. Doc. 30-7, 59:6–21, 62:5–10.

[19] *Id.* 62:5–10.

> or the responsibility of others besides [the] defendant in causing the accident." *Id.* at 50; *Gladney v. Milam*, 911 So.2d 366, 371 (La.Ct.App. 2005) (explaining that "if there is an equally plausible explanation for the occurrence, the doctrine is not applicable").

*Arant v. Wal-Mart Stores, Inc.*, 628 F. App'x 237, 240 (5th Cir. 2015). Because Plaintiffs' expert expressly stated (i) that he was incapable of identifying the cause of the fire, and (ii) that possible causes included those attributable to something other than the lawn mower, any attempt to invoke *res ipsa loquitur* would be improper. (*See, e.g.*, Tauzin Dep., Rec. Doc. 30-7, 59:2–66:19).

### b. Plaintiffs have failed to establish that the product was "unreasonably dangerous" in any form under the LPLA.

#### 1. Construction or composition

Under the LPLA, a product is unreasonably dangerous due to a defect in "construction or composition" (i.e., a "manufacturing defect") if, "at the time the product left the manufacturer's control, 'the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.'" *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002) (quoting La. R.S. § 9:2800.55). Louisiana Revised Statute § 9:2800.55 requires a plaintiff to "prove that a product 'is defective due to a mistake in the manufacturing process.'" *Abrogast v. Timex Corp.*, 05-2076, 2010 WL 148288, at *5 (W.D. La. Jan. 12, 2010) (quoting *Stahl*, 283 F.3d at 263). "The focus of the inquiry on a manufacturing defect claim 'is the specific product that was in hand at the time of use, as opposed to the product in general.'" *Weams v. FCA US L.L.C.*, 17-4, 2019 WL 960159, at *20 (M.D. La. Feb. 27, 2019) (quoting *Allgood v. GlaxoSmithKline PLC*, 06-3506, 2008 WL 483574, at *7 (E.D. La. Feb. 20, 2008), *aff'd sub nom. Allgood v. SmithKline Beecham Corp.*, 314 F. App'x 701 (5th Cir. 2009)).

"Because LPLA liability for a defect in construction or composition is strict liability, the plaintiff need not show that the manufacturer knew or should have known of the product deviation

and could have prevented it, *i.e.*, negligence." *Roman v. W. Mfg.*, 691 F.3d 686, 697 (5th Cir. 2012) (cleaned up). However, "a plaintiff 'must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it unreasonably dangerous.'" *Moore v. BASF Corp.*, No. 11-1001, 2012 WL 6025917, at *3 (E.D. La. Dec. 4, 2012) (quoting *Welch v. Technotrim, Inc.*, 778 So.2d 728, 733 (La.App. 2 Cir. 2001)). "The defect under Section 9:2800.55 may be established by circumstantial evidence." *Roman*, 691 F.3d at 698 (citations omitted). "Any deviation that increases the propensity for injury is material." *Id.* (quoting *Masters v. Courtesy Ford Co.*, 758 So.2d 171, 192 (La.Ct.App. 1999), *vacated on other grounds*, 765 So.2d 1056 (La. 2000)).

In opposition to Defendants' motion, Plaintiffs do not point to evidence of the "manufacturer's specifications or performance standards" for the lawn mower. La. R.S. § 9:2800.55. Nor, for that matter, do they point to any evidence that raises a genuine dispute that Ariens materially deviated from a specification or performance standard for the product or "from otherwise identical products manufactured by [Ariens]," as required by the LPLA. *Id.* Because Plaintiffs rely only on "unsubstantiated assertions," instead of identifying evidence in the record that raises a genuine dispute as to the material facts necessary to prove their manufacturing defect claims, Ariens is entitled to summary judgment on Plaintiffs' claims that the lawn mower was unreasonably dangerous under the LPLA due to a manufacturing defect. *Ragas*, 136 F.3d at 458.

**2. Nonconformity with an express warranty**

Under the LPLA, "[a] product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue." La. R.S. § 9:2800.58. The

11

LPLA defines "'express warranty' as a representation, statement of alleged fact or a promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance." *Id.* § 9:2800.53(6). The Louisiana Supreme Court has emphasized that "[t]he LPLA makes it very clear that in order for the manufacturer to be liable, there must be a specified stated warranty, i.e., *express*." *Reynolds v. Bordelon*, 2014-2371, p. 11 (La. 6/30/15), 172 So.3d 607, 615.

In opposition, Plaintiffs do not point to evidence of an express warranty made by Ariens, much less any evidence that raises a genuine dispute that the lawn mower did not conform with a particular express warranty. Because Plaintiffs have not "identif[ied] specific evidence in the record" to create a genuine dispute as to the existence of any "express warranty made at any time by the manufacturer," as required by Louisiana Revised Statute § 9:2800.58, Ariens is entitled to summary judgment on Plaintiffs' claims that the lawn mower was unreasonably dangerous under the LPLA due to nonconformity with an express warranty. *Ragas*, 136 F.3d at 458.

### 3. Defective design

Under the LPLA, a product is defective in design if, at the time it left the manufacturer's control:

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

La. R.S. § 9:2800.56.

In other words, to withstand a motion for summary judgment on a design defect claim, a plaintiff must first demonstrate that safer alternative designs were in existence at the time the product left the manufacturer's control, and next that the risk avoided by such designs outweighed the burden of adopting them. *Morgan v. Gaylord Container Corp.*, 30 F.3d 586, 590 (5th Cir. 1994). Here, Plaintiffs have failed to put forth evidence in support of either requirement, and the evidence that is in the record actually controverts Plaintiffs' claim.[20] Thus, Defendants are entitled to summary judgment on Plaintiffs' claims that the lawn mower was unreasonably dangerous under the LPLA due to its defective design.

### 4. Inadequate warning

"To maintain a failure-to-warn claim, a plaintiff must demonstrate that 'the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.'" *Stahl*, 283 F.3d at 261 (quoting La. R.S. § 9:2800.57(A)). A plaintiff need not prove a design or construction defect in order to prevail on a failure-to-warn claim. *Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 205 (5th Cir. 2001) (citations omitted). In all cases, however, a manufacturer is liable for inadequate warning only if such defect was a proximate cause of the plaintiff's injury. *Peart v. Dorel Juvenile Grp., Inc.*, No. 09–7463, 2011 WL 1336563, at *3 (E.D. La. Apr. 7, 2011) (citations omitted); La. R.S. § 9:2800.54(A). In addition to proving cause-in-fact, a plaintiff must also demonstrate that the inadequate warning was the most probable cause of his injury. *See Wheat v. Pfizer, Inc.*, 31 F.3d 340, 342 (5th Cir. 1994) (citations omitted); *Lacoste v. Pilgrim Int'l*, No. 07–2904, 2009 WL 1565940, at *5 (E.D. La. June 3, 2009) (citations omitted); *cf. Peart*, 2011 WL 1336563, at *3.

---

[20] *See* Tauzin Dep., Rec. Doc. 30-7, 54:9–12 ("Q. Did you provide any alternative designs of this product? A. No sir. That wasn't in my scope of work.").

Here, Plaintiffs have failed on the following accounts: (i) they have provided no evidence that an inadequate warning made the lawn mower unreasonably dangerous; (ii) they have not established that an inadequate warning proximately caused their injuries; and (iii) they have not shown an inadequate warning was the most probable cause of their injuries. As such, Defendants are entitled to summary judgment on this claim.

### IV. The LPLA does not apply to—and, thus, does not foreclose—Plaintiffs' general negligence and breach of warranty claims against Home Depot.

Plaintiffs' petition makes the following non-LPLA allegations against Home Depot:

> Home Depot was negligent in distributing, marketing, and/or selling the Ikon XD 52 x 52 zero turning lawn mower, which they knew, or in the exercise of reasonable care should have known, was unreasonably dangerous.
>
> Home Depot made misrepresentations and/or omissions of material fact, including but not limited to, that the Ikon XD 52 x 52 zero turning lawn mower was fit for its intended use and that the Ikon XD 52 x 52 zero turning lawn mower was of merchantable quality.

(Rec. Doc. 1-1, ¶¶ 18–19). These allegations are respectively rooted in general negligence and breach of contract theories of liability under Louisiana law. *See ExPert Riser Sols., LLC v. Techcrane Int'l, LLC*, 2019-1165 (La.App. 1 Cir. 12/20/20), 319 So.3d 320, 328 (discussing the warranty of fitness for ordinary and/or intended use).

The Court notes that Plaintiffs' apparent attempt to import the LPLA's definition of "unreasonably dangerous" onto Home Depot's misconduct is impermissible. *See Battistella*, 2004 WL 1336444, at *1 n.1 (defining "unreasonably dangerous"). An LPLA claim may only be brought against the "manufacturer," as defined by Louisiana Revised Statute § 9:2800.53(1), and Plaintiffs have not asserted that Home Depot is the alter ego of an alien manufacturer or a seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage. *See* La. R.S. § 9:2800.53(1)(b), (d).

Defendants, who only briefly address the negligence and breach of warranty allegations in their motion, face the same problem.[21] In a footnote, the motion argues that "[i]n the absence of expert testimony that the machine at issue was unreasonably dangerous, Plaintiffs cannot carry their burden of proof."[22] For the reasons just discussed, this contention has no merit. As such, Defendants' motion does not foreclose Plaintiffs' negligence and breach of warranty claims against Home Depot.

**V.     Conclusion**

For the foregoing reasons, the **Motion for Summary Judgment (Rec. Doc. 22)**, submitted by Defendants Ariens Company and Home Depot U.S.A., Inc. is **GRANTED in part** and **DENIED in part.** Defendants' Motion for Summary Judgment on Plaintiffs' claims against Ariens Company is **GRANTED** and Plaintiffs' claims against Defendant Ariens Company are, thus, **DISMISSED WITH PREJUDICE.** Defendants' Motion for Summary Judgment on Plaintiffs' claims against Home Depot U.S.A., Inc. is **DENIED WITHOUT PREJUDICE.**

Accordingly;

**IT IS ORDERED** that the parties shall have until <u>**Tuesday, April 15, 2025**</u> to file any additional dispositive motions. Any motion filed on or before April 15, 2025 shall be noticed for submission in accordance with the Local Rules.

**IT IS FURTHER ORDERED** that Defendants' **Motion in Limine (Rec. Doc. 26)** is **DENIED WITHOUT PREJUDICE**. The parties shall be granted leave to resubmit motions in limine, if necessary, pending the full resolution of any dispositive motion filed on or before April 15, 2025.

---

[21] Rec. Doc. 22-1, at 2 n.1.

[22] *Id.*

March 11, 2025

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

16